UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Samit Ahlawat,<br>    *Plaintiff*,<br>         *v.*<br>State of Connecticut Superior Court,<br>    *Defendant*. | Civil No. 3:12-cv-1042 (JBA)<br><br>July 1, 2013 |

**RULING ON DEFENDANT'S MOTION TO DISMISS**

On July 18, 2012, pro se Plaintiff Samit Ahlawat filed suit against Defendant State of Connecticut, Superior Court alleging violations of 42 U.S.C. § 1982 and the First, Fourth, Eighth, and Fourteenth Amendments arising out of a state court divorce proceeding. (Compl. [Doc. # 1] at 1–2.) Defendant moves [Doc. # 19] to dismiss for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. For the reasons discussed below, the Court grants Defendant's motion to dismiss.

**I.    Background**

On August 10, 2011, Plaintiff's ex-wife instituted divorce proceedings against Plaintiff in Connecticut Superior Court. (*See* "Memorandum of Decision," [hereinafter "Decision"] Ex. to Compl. at 1.) On July 2, 2012, the Honorable Deborah Frankel issued a decision awarding Plaintiff's ex-wife the entirety of four bank and 401K accounts, totaling $116,768.66. *Id.* at *9–10.[1] Judge Frankel also ordered that the attorneys for both parties retain their respective client's passport until the transfer of funds ordered in the divorce decree had been completed. Judge Frankel based her order on findings that

---

[1] This value represented an award of $57,600.00 in alimony, $15,000.00 in attorney's fees, and $44,168.66 in marital assets. (Decision at 10.)

Plaintiff "failed to follow direct court orders. . . [and] 'doctored' several documents in an attempt to hide assets." *Id.* at *7.

Plaintiff brought suit in federal court on July 18, 2012 against the Connecticut Superior Court. (Compl. at 1.) In Count One he alleges the Superior Court "appl[ied] a different standard of property division" based on Plaintiff's nationality in violation of 42 U.S.C. § 1982. (Compl. at 2 ¶ 1). Count Two asserts a Fourteenth Amendment Due Process claim based on Judge Frankel's alleged predisposition against Plaintiff. (*Id.* at 2 ¶ 2.) Count Three asserts a Fourteenth Amendment Equal Protection claim on the basis of the state court judge's alleged unequal treatment as between Plaintiff and Plaintiff's ex-wife. (*Id.* at 2 ¶ 3.) Count Four alleges seizure of Plaintiff's passport in violation of the Fourth Amendment. (*Id.* at 2 ¶ 4.) Count Five asserts a First Amendment claim arising out of Judge Frankel's conclusion that Plaintiff's work hours, which Plaintiff characterizes as "protected expressive conduct," resulted in the dissolution of Plaintiff's marriage. (*Id.* at 2 ¶ 4.) Lastly, Count Six alleges that the court's order constituted an excessive fine in violation of the Eighth Amendment. (*Id.* at 3 ¶ 6.) Plaintiff requests only injunctive relief, seeking that the state be enjoined from seizing his assets and that his passport be returned. (*Id.* at 3.)

II.    **Discussion**

Defendant seeks dismissal of the Complaint on the basis of lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine. (Def.'s Mem. Supp. [Doc #19-1] at 3–5.) Defendant further argues that the Court lacks jurisdiction to award an equitable remedy (*id.* at 5), that the Complaint violates the *Younger* abstention doctrine (*id.* at 6), and that the Eleventh Amendment bars this suit (*id.* at 14). Finally, Defendant argues that Plaintiff

has failed to state a claim upon which relief can be granted because states and their agencies are not "persons" under 42 U.S.C. § 1982. (*Id.* at 16.) [2]

"[A] claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Australia Bank Ltd.,* 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Arar v. Ashcroft,* 532 F.3d 157, 168 (2d Cir.2008)). "When considering a motion to dismiss pursuant to Rule 12(b)(1), the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Sweet v. Sheahan,* 235 F.3d 80, 83 (2d Cir.2000). In response to a motion to dismiss pursuant to Rule 12(b)(1), "[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000).

### A. *Rooker-Feldman* Doctrine

Defendant asserts that Plaintiff's claim is barred under the *Rooker-Feldman* doctrine because Plaintiff's requested relief effectively asks the Court to review and reject the final judgment of a state court divorce proceeding rendered prior to the filing of this federal action. (Def.'s Mem. Supp. at 3–4.)

---

[2] Defendant also moves for dismissal on the grounds of failure to state a claim under Rule 12(b)(6). Neither party raises the issue of the domestic relations exception to jurisdiction, and the Second Circuit has not resolved whether this exception would provide a further bar to Plaintiff's federal question lawsuit. *See Ashmore v. Prus*, 12-2760-CV, 2013 WL 362998 (2d Cir. Jan. 31, 2013), *cert. denied,* 133 S. Ct. 2038 (U.S. 2013) ("We expressly decline to address whether the domestic relations exception to federal subject matter jurisdiction applies to federal question actions."). Because the Court concludes that it lacks subject matter jurisdiction over this matter under the *Rooker-Feldman* doctrine and the Eleventh Amendment, it is unnecessary to consider these alternate grounds for dismissal.

The *Rooker–Feldman* doctrine directs that a federal court must abstain from considering claims when the following four requirements are met: "(1) the plaintiff lost in state court, (2) the plaintiff complains of injuries caused by the state court judgment, (3) the plaintiff invites district court review of that judgment, and (4) the state court judgment was entered before the plaintiff's federal suit commenced." *Remy v. New York State Dep't of Taxation & Fin.*, No. 11–1921, 2013 WL 28362, at *1 (2d Cir. Jan. 3, 2013) (internal citation and quotation marks omitted). "[T]he applicability of the *Rooker–Feldman* doctrine turns not on the *similarity* between a party's state-court and federal-court claims . . . but rather on the *causal relationship* between the state-court judgment and the injury of which the party complains in federal court." *McKithen v. Brown*, 481 F.3d 89, 97–98 (2d Cir. 2007) (emphasis in original) (citation omitted).

The first and fourth requirements for the *Rooker-Feldman* doctrine are readily satisfied. Plaintiff brought suit on July 18, 2012 after the challenged state court judgment entered on July 2, 2012 in which Plaintiff, the state court 'loser,' was ordered to transfer certain assets to his ex-wife.

The second requirement of the *Rooker-Feldman* doctrine is also satisfied because Plaintiff's constitutional claims and his alleged injuries arise from what he asserts was a wrongfully decided state court judgment. *See Cohen v. New York—New York Attorney General*, No. 1:10-CV-1300(LEK)(RFT), 2011 WL 3555857, at *1, 4–5 (N.D.N.Y. Aug. 11, 2011), *aff'd sub nom*, *Cohen v. New York*, 481 F. App'x 696 (2d Cir. 2012), *cert. denied*, No. 12-1204, 2013 WL 1386711 (June 10, 2013) (the district court lacked jurisdiction under *Rooker-Feldman* doctrine when pro se Plaintiff's complaint against state agency alleged due process and equal protection violations resulting from divorce proceedings).

Finally, Plaintiff seeks an order from the Court enjoining the seizure of his property and requiring the return of his passport, which falls squarely within the ambit of the *Rooker-Feldman* doctrine because such an order by this Court would have the effect of reversing the state court judgment. (*See* Decision at 10–11 (awarding Plaintiff's ex-wife the entire balance of four accounts and ordering party's attorneys to return party's passports only after Plaintiff transfers funds to Plaintiff's ex-wife)); s*ee also Patterson v. Connecticut Dep't of Labor Adm'r*, No. 11-CV-1237 (JCH), 2012 WL 4484913, at *8 (D. Conn. Sept. 27, 2012) ("The *Rooker–Feldman* doctrine clearly applies to [Plaintiff]'s claims to the extent he seeks an order from this court overturning the determination of the state court."). The language of Plaintiff's Complaint demonstrates that he is seeking review of the state court decision, which he claims was capricious because it arbitrarily ignored the short length of Plaintiff's marriage and the lack of offspring, and it gave weight to its finding that Plaintiff was not credible. (*See* Compl. at 1.) Accordingly, the Court lacks subject matter jurisdiction over Plaintiff's claims under the *Rooker-Feldman* doctrine. *See Hoblock v. Albany Cnty. Bd. of Elections,* 422 F.3d 77, 84 (2d Cir. 2005) ("*Rooker* and *Feldman*. . . established the clear principle that federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments.").

Notwithstanding Plaintiff's view that the *Rooker-Feldman* doctrine does not bar claims against state judicial actions that infringe on federal statutes (*see* Pl.'s Opp'n [Doc. # 21] at 1), "[i]f a litigant is dissatisfied with the outcome of the state court proceeding, the litigant can only obtain federal review of the claim by appealing through the state courts and then petitioning the United States Supreme Court for a writ of certiorari." *S. v. Webb*, 602 F. Supp. 2d 374, 383 (D. Conn. 2009). "Federal district courts 'do not have

jurisdiction. . . over challenges to state court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional.'" *Stein v. City of New York*, 24 F. App'x 68, 69 (2d Cir. 2001) (quoting *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 486 (1983)). Rather than challenging the state court dissolution decision through the state court system of appellate review, Plaintiff seeks federal review in federal district court, an action that is clearly barred under *Rooker-Feldman*. *See Johnson v. Smithsonian Inst.*, 189 F.3d 180, 185 (2d Cir. 1999) ("[A]mong federal courts, only the Supreme Court has subject matter jurisdiction to review state court judgments."). Plaintiff further argues that Judge Frankel's order requiring the continued retention of Plaintiff's passport is "non-judicial" and not precluded under the *Rooker-Feldman* doctrine. (*See id.* at 2.) Plaintiff bases his argument on *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 477 (1983) (internal citation and quotation marks omitted), which discusses the distinction between judicial and legislative acts as follows:

> A judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist. That is its purpose and end. Legislation on the other hand looks to the future and changes existing conditions by making a new rule to be applied thereafter to all or some part of those subject to its power. The establishment of a rate is the making of a rule for the future, and therefore is an act legislative not judicial in kind.

The context of *Feldman* is the establishment of a forward-looking rate rule by a state corporation commission that applies generally to the public, whereas the retention of Plaintiff's passport to ensure his compliance with court orders is judicial in nature, applies only to Plaintiff, and is within a court's authority. *See United States v. Praetorius*,

622 F.2d 1054, 1062 (2d Cir. 1979) ("Nothing. . . prohibits a court from ordering the [passport] holder to surrender it for use in connection with a judicial proceeding.").

Thus, Plaintiff's Complaint is clearly barred under *Rooker-Feldman* and the Court grants the Defendant's motion to dismiss on this basis.

### B. Eleventh Amendment

Defendant also maintains that the action is barred by the Eleventh Amendment,[3] as a lawsuit against a state by its own citizen, s*ee Hans v. Louisiana,* 134 U.S. 1, 18–19 (1890), where the state has not waived its sovereign immunity nor has Congress abrogated it through legislative action. *See Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 99–101 (1984). The Eleventh Amendment's grant of sovereign immunity extends to entities considered to be "arm[s] of the State," *Mt. Healthy City Sch. Bd. of Educ. v. Boyle,* 429 U.S. 274, 280 (1977), although not to individual state officials sued in their official capacity where only prospective injunctive relief is sought, *see Va. Office for Prot. and Advocacy v. Stewart,* 131 S. Ct. 1632, 1638 (2011) (citing *Ex Parte Young,* 209 U.S. 123 (1908)).

"[T]he Defendant Superior Court of Connecticut is immune from suit under the Eleventh Amendment as an arm of the State." *Chance v. Conn. Super. Ct.*, No. 3:04-CV-155(MRK), 2004 WL 2958469, at *2 (D. Conn. Dec. 13, 2004). Further, "in enacting 42 U.S.C. § 1983, Congress did not abrogate the immunity from suit that the Eleventh Amendment provides a state." *King v. Cuomo*, 08-CV-6058 (SHS), 2011 WL 13944, at *4

---

[3] "[T]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects any Foreign State." U.S. Const. Amend. XI.

(S.D.N.Y. Jan. 4, 2011) *aff'd in part*, 465 F. App'x 42 (2d Cir. 2012) (citing *Quern v. Jordan,* 440 U.S. 332, 345 (1979)).  Thus, the Superior Court of the State of Connecticut is immune from suit by Plaintiff and Plaintiff's suit fails as a matter of law.

### III.     Conclusion

For the foregoing reasons, the Court grants Defendant's Motion to Dismiss.  The Clerk is directed to close this case.

IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 1st day of July, 2013.